UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5:13-69-DCR |
| | ) | Civil Action No. 5:16-38-DCR |
| v. | ) | |
| | ) | |
| STEEVE ALEXIS, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On February 2, 2016, Defendant Steeve Alexis filed a Motion under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (R. 44). The United States

has filed its Response. (R. 53).  Defendant has not filed a Reply and his time to do so has now

expired.[1]  (*See* R. 54).  Accordingly, the matter is ripe for consideration and preparation of a Report

and Recommendation.  For the reasons stated below, it will be **recommended** that Defendant's

Motion to Vacate, Set Aside, or Correct Sentence (R. 44) be **denied**.

## I.   FACTUAL AND PROCEDURAL HISTORY

On May 3, 2013, a federal grand jury returned an Indictment against Defendant charging him

with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), as well as

a forfeiture allegation.  (R. 1).  At his arraignment proceeding on June 4, 2013, Defendant pleaded

not guilty, and a trial was set for July 29, 2013, before then Senior District Judge Karl S. Forester.

(R. 9).

---

[1]On the date this Report and Recommendation was entered, Defendant filed a Motion for an
Extension of Time, seeking an additional 45 days to file a Reply.  (R. 55).  This Motion will be denied by
contemporaneous Order.

On July 17, 2013, Defendant, through counsel, filed a Motion to Continue Trial, stating it is possible that Defendant could be considered an Armed Career Criminal and counsel was working with the Government and the Probation Office to determine Defendant's status prior to entering into a plea agreement. (R. 13). The Motion to Continue Trial was granted, and the trial was reset for September 3, 2013. (R. 14). On August 26, 2013, Defendant filed a Motion for Rearraignment, which the Court granted. (R. 15). On September 3, 2013, Defendant appeared with counsel for rearraignment, but at the request of the parties the rearraignment was continued to October 8, 2013, to provide Defendant an opportunity to research one of the predicate offenses of a potential Armed Career Criminal designation. (R. 17; R. 53-2, at ¶ 10). On October 3, 2013, Defendant filed another Motion to Continue the Rearraignment Hearing, citing counsel's efforts to investigate the predicate offenses that would form the basis of any Armed Career Criminal enhancement and stating the defense required additional time to investigate. (R. 18). The Motion was granted, and the rearraignment proceeding was reset for November 12, 2013. (R. 21).

On November 12, 2013, Defendant appeared before presiding District Judge Danny C. Reeves, to whom the case had then been recently reassigned, and counsel informed the Court that Defendant was not ready to enter a guilty plea as he wanted to review a videotape that had not been provided in discovery. The Court set the matter for trial on December 30, 2013. (R. 23; R. 50). On December 10, 2013, Defendant filed a Second Motion for Rearraignment. (R. 24).

On December 23, 2013, Defendant appeared with counsel at a rearraignment hearing to enter a guilty plea to Count 1 of the Indictment pursuant to a written Plea Agreement with the United States. (R. 26; R. 31; R. 51). As part of the Plea Agreement, Defendant expressly agreed to waive his right to appeal his guilty plea, conviction, and sentence, except Defendant reserved the right to

appeal any designation as an Armed Career Criminal. (R. 31, at 4). In addition, Defendant agreed to waive the right to collaterally attack the guilty plea, conviction and sentence except for claims of ineffective assistance of counsel. (*Id*.).

In exchange for Defendant's plea, the United States agreed to recommend a decrease in his United States Sentencing Guidelines offense level by two, three if appropriate, in recognition of Defendant's acceptance of responsibility. (*Id*. at 3 ¶ 5(e)). The Plea Agreement expressly provided that the Government takes the position that Defendant has three qualifying felony convictions for trafficking in a controlled substance and one conviction for fleeing and evading that qualify him for classification as an Armed Career Criminal under 18 U.S.C. § 924(e). (*Id*. at 2 ¶ 4). The Plea Agreement further provided that Defendant reserves the right to object to that classification. (*Id*. at 3 ¶ 5(c)).

At the rearraignment hearing, Defendant was placed under oath. (R. 51, p. 3). Among other things, the District Court questioned Defendant extensively at the rearraignment to ensure that Defendant understood all of the terms of the Plea Agreement. (*Id*. at 9-10, 13-30). The Court specifically asked Defendant if he had read the Plea Agreement, if defense counsel had gone over the Plea Agreement with him, if he understood the terms of the Plea Agreement, and if he was satisfied with defense counsel's representation; Defendant answered in the affirmative to all of these questions. (*Id*. at 9-10). The Court asked the United States to summarize the terms of the Plea Agreement, and defense counsel confirmed Assistant United States Attorney (AUSA) Walker accurately relayed the terms, but added that he wanted to make it clear Defendant would be challenging the Government's belief that Defendant qualifies as an Armed Career Criminal. (R. 51,

10-14).  Defendant also confirmed that with the clarification offered by his counsel, the AUSA had accurately summarized the essential parts of the Plea Agreement.  (*Id*. at 14).

In addition, the presiding District Judge specifically asked Defendant whether anyone had made him any promises to induce him or persuade him to either sign the Plea Agreement or to enter a guilty plea other than as reflected in the Plea Agreement.  Defendant responded "No, sir."  (*Id*. at 14).  Defendant also denied that anyone had made any threats or in any way forced him to either sign the documents or to enter a guilty plea.  (*Id*. at 15).

The Court also went over the potential penalties Defendant faced by pleading guilty, specifically discussing the penalty Defendant faced if the Court should find he qualifies to be classified as an Armed Career Offender.  (*Id*. at 15-17).  Defendant responded that he understood the penalties explained to him were the maximum penalties that could be imposed by the Court under those circumstances.  (*Id*. at 17).  Defendant also acknowledged he understood that at the time of his rearraignment it was impossible for the Court or his attorney to know the applicable guideline range.  (*Id*. at 18).  The Court explained Defendant's guideline range could not be determined until after the Presentence Investigation Report (PSR) was prepared and all objections thereto resolved.  (*Id*. at 18).  The Court also explained that Defendant would not be able to withdraw his plea if his attorney's prediction or his own belief about the guideline range was incorrect or if the sentence that is imposed is more severe than he expected.  Defendant told the Court he understood.  Defendant admitted the factual basis provided in the Plea Agreement and entered a guilty plea to the charge.  (*Id*. at 30- 31).

Following Defendant's rearraignment and prior to his sentencing hearing, the Probation Office prepared a PSR. (R. 37). The PSR contained an extensive analysis of Defendant's background, including his criminal history.  The Probation Officer determined Defendant qualified

as an Armed Career Criminal. (*Id*. at ¶¶ 44, 50). Defendant, through counsel, submitted Objections to the PSR, which included an Objection to his classification as an Armed Career Criminal. (R. 37, at 22-23).

On April 16, 2014, Defendant appeared with counsel for sentencing. (R. 30; R. 39). Counsel argued Defendant's position with respect to his classification as an Armed Career Criminal, and the Court overruled the Objection upon finding Defendant had three qualifying felony drug convictions. (R. 39, at 4-9). Based on Defendant's Armed Career Criminal classification, his offense level increased from 24 to 34, but he received the benefit of a three-level reduction for acceptance of responsibility, resulting in a final offense level of 31. (*Id*. at 11). The District Court found Defendant's criminal history category was a VI due to his classification as an Armed Career Criminal. Thus, Defendant's sentencing range under the Sentencing Guidelines was 188-235 months. (*Id*. at 12). Further, the Court found that his Armed Career Criminal status subjected Defendant to a mandatory minimum sentence of 15 years and a statutory maximum sentence of life on the current charge. (*Id*.).

The Court heard from defense counsel and the AUSA regarding an appropriate sentence in light of Defendant's circumstances. Defense counsel argued the Armed Career Criminal designation increased Defendant's guideline range by nearly two and a half times, and he requested Defendant be sentenced to the mandatory minimum due to the significant increase caused by the designation. (*Id*. at 14). The United States also requested Defendant be sentenced to a term of imprisonment in the 15-year range. (*Id*. at 15). The Court considered the sentencing factors contained in 18 U.S.C. § 3553 and explained a 15-year sentence would not be appropriate under the circumstances.

5

Defendant was instead sentenced to 232 months in prison followed by a 3-year term of supervised release.  (*Id.* at 16-18).

Defendant appealed his designation as an Armed Career Criminal under 18 U.S.C. § 924(e)(1).  On March 4, 2015, the Sixth Circuit held Defendant's three prior drug offenses were separate offenses despite being charged in one indictment and being consolidated for plea purposes. (R. 41; *United States v. Alexis*, 603 F. App'x 466, 469-71 (6th Cir. Mar. 4, 2015)).  Thus, the Sixth Circuit affirmed the District Court's sentence, holding that having a history of three serious drug offenses committed on separate occasions followed by a felon-in-possession conviction satisfies the Armed Career Criminal Act's requirements for an Armed Career Criminal classification.  (*Id.*).  On February 2, 2016, Defendant filed the present Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (R. 44).

## II.    ANALYSIS

Under 28 U.S.C. § 2255(a), a federal prisoner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack.  *See* § 2255(a).  A § 2255 motion does not have to be founded on constitutional error or even federal law.  *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006).  However, to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).  To obtain relief under § 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the

criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *abrogated on other grounds as recognized by Kumar v. United States*, 163 F. App'x 361 (6th Cir. 2006); *see also Hicks v. United States*, 122 F. App'x 253, 256 (6th Cir. 2005); *McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).

In sum, a defendant must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A defendant must prove his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

Here, Defendant asserts the following three vague claims of ineffective assistance of counsel in his § 2255 Motion: 1) counsel failed to meet the ethical obligations of the legal profession; 2) counsel failed to communicate with him during the pretrial stages; and 3) counsel failed to consider relevant factors, which resulted in erroneous exercise of discretion. In his attached Memorandum of Law, Defendant provides a little more substance to these claims, arguing his plea was involuntary and unintelligent because counsel promised him he would receive not more than ten years if he pled guilty to the § 922(g) charge. (R. 44-1, at 11-15). He also raises arguments that counsel erred in not challenging the application of § 924(e) on the basis that it was not presented to the Grand Jury; failing to communicate with Defendant; failing to conduct an independent pretrial investigation; failing to file any substantive pretrial motions; and failing to inform Defendant of the consequences of pleading guilty as opposed to going to trial. (*Id*.)

7

In addition, it appears Defendant is also raising non-ineffective assistance of counsel claims.[2] Specifically, Defendant argues that the federal government improperly interfered in his state court case by charging him federally for being a felon in possession of a firearm; and that the Court erred in sentencing him because a jury, not the Court, should have determined whether he qualified for the Armed Career Criminal enhancement under 18 U.S.C. § 924(e).

### A.    Defendant has not established that his counsel provided ineffective assistance

Defendant asserts various claims that his trial counsel, Jeffrey A. Darling, provided ineffective assistance, which led to an involuntary and unknowing entry of a guilty plea.[3] Specifically, Defendant argues that counsel promised him he would not receive more than ten years if he pleaded guilty to the § 922(g) charge in the Indictment.  He also argues that neither his counsel nor the Government informed him that he was eligible for the Armed Career Criminal enhancement under 18 U.S.C. § 924(e) until after he signed the Plea Agreement.  He further vaguely asserts that counsel failed to:  meet the ethical obligations of the legal profession; consider relevant factors, which resulted in erroneous exercise of discretion; communicate with him by not providing all documents so he could make an informed decision on whether to plead guilty or proceed to trial; conduct an adequate independent pretrial investigation; file any substantive pretrial motions; and inform him of the consequences of pleading guilty as opposed to proceeding to trial.

---

[2]While it is not clear that Defendant is asserting these non-ineffective assistance of counsel claims, because he is proceeding *pro se*, the Court construes his Motion under a more lenient standard than applied to attorneys.  *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985).

[3]The Government concedes that Defendant may pursue his claims of ineffective assistance of counsel in a § 2255 Motion.  (R. 53, at 2).

The Supreme Court has held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To meet this standard, the Court set forth a two-part test. First, a defendant is required to show that counsel's representation fell "below an objective standard of reasonableness." *Id*. at 687-88. In reviewing this prong, the lower court is to apply a deferential standard; there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. If a defendant satisfies the first prong, he must also establish that counsel's deficient performance prejudiced him. *Id*. at 691-94. Specifically, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Thus, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment. *Id.* at 691.

In the context of a guilty plea, where a defendant is represented by counsel and enters a guilty plea upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). While the deficient performance prong of the *Strickland* test remains the same, to establish prejudice a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (quoting *Hill*, 474 U.S. at 58-59). Both prongs of the test must be met before a court finds ineffective assistance, but courts are not required to conduct an analysis under

9

both. *Strickland*, 466 U.S. at 697.  If the court finds a defendant cannot meet one prong, it need not

address the second prong.  *Id.*

### 1.    Defendant cannot establish prejudice as a result of any incorrect statement by counsel regarding Defendant's sentencing exposure

Defendant claims his trial counsel promised him that he would not receive more than ten

years of imprisonment if he pleaded guilty to the § 922(g) charge.  Even if counsel had made such

a promise, which counsel denies in his Affidavit (*see* R. 53-2, at 6 ¶ 22),[4] Defendant cannot establish

prejudice because the record demonstrates Defendant was well aware of his true sentencing exposure

prior to pleading guilty.  *See Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999) (court's colloquy

cured alleged promise from counsel); *United States v. Elliott*, No. 6:06-101-DCR, 2011 WL

1793384, at *5 (E.D. Ky. May 11, 2011) ("[W]hen the district court properly conducts a Rule 11

colloquy and informs the defendant of the maximum penalty he may receive, he simply cannot then

argue that an attorney's inaccurate prediction caused prejudice."); *Farmar v. United States*, No. 12-

cr-20084, 2016 WL 1022966, at *2 (E.D. Mich. Mar. 15, 2016) (finding even if counsel had

promised defendant he would be sentenced to no more than six months of imprisonment, defendant

could not establish prejudice because he acknowledged his true sentencing exposure during the plea

colloquy and in the written plea agreement).  Here, both the Plea Agreement and the transcript of the

---

[4]Because the Court finds Defendant cannot establish prejudice, it need not consider Defendant's claim that counsel made him a promise that he would be sentenced to no more than ten years. The Court notes, however, that this claim is contradicted by the record.  Specifically, a review of the transcript for the rearraignment proceeding demonstrates Defendant told the Court, under oath, that no one had made him any promises to induce or persuade him to either sign the Plea Agreement or to pled guilty. (R. 51, at 14-15). If counsel had made such a promise, Defendant had ample opportunity to notify the Court of this representation, and he did not do so.  The Supreme Court has instructed that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," and that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

rearraignment proceeding reveal Defendant knew he could be subject to the Armed Career Criminal enhancement, which would carry a mandatory minimum sentence of 15 years of imprisonment. (R. 31; R. 51).

Looking first at the Plea Agreement, this document informed Defendant that the United States believed he qualified for the Armed Career Criminal enhancement, and thus the statutory punishment for Count One would be not less than 15 years. (R. 31, at 2 ¶ 4). While the Plea Agreement provided that Defendant reserved the right to challenge the Government's assertion that he qualified as an Armed Career Offender and he retained his ability to appeal such a classification, the Plea Agreement explained the consequences of such a designation. (*Id.* at 2-4, ¶¶ 4, 5, 8). Thus, the Plea Agreement itself sets forth sufficient basis to place Defendant on notice that he could be sentenced as an Armed Career Criminal, which would subject him to a statutory minimum sentence of 15 years and a maximum sentence of life. (*Id.* at 2 ¶ 4).

In addition, during the rearraignment, defense counsel explained that Defendant would be challenging the Government's belief that his three felony convictions qualify him for the Armed Career Criminal enhancement, but stated the AUSA's recital of the Plea Agreement terms was accurate. Defendant also agreed the AUSA accurately relayed the terms of the Plea Agreement, which included the recital that the Government believed the Armed Career Criminal enhancement was applicable to Defendant. (*Id.* at 10-15). Defendant informed the Court prior to pleading guilty that he had reviewed the Plea Agreement, discussed it with counsel, and understood the terms and conditions therein. (R. 51, at 9-10).

Further, The Court reviewed the potential penalties Defendant would face if he pled guilty, including those under the Armed Career Criminal Act, stating in part:

11

THE COURT:  . . . If the Court finds that you have three qualifying felony drug convictions for trafficking in a controlled substance or for violent felonies, and you do - - and if you were to qualify as an armed career criminal under the statute, the statutory penalty would be not less than 15 years imprisonment. It could be longer than that. It could be 15 years to life, but it's a minimum of 15 years, . . . Do you understand that those are the maximum penalties that could be imposed by the Court under the circumstances that I've described?

DEFENDANT ALEXIS:  Yes, Sir.

(*Id.* at 16-17). The Court further explained that before the Probation Officer prepared a PSR and the Court ruled on any objections, "it would be impossible for the Court or for your attorney to know exactly what your guideline range would be." (*Id.* at 18). Defendant stated he understood. (*Id.*). The Court also explained that Defendant could not withdraw from his Plea Agreement "[i]f, for example, if your attorney's prediction or your belief about your guidelines were to be incorrect," or "if the sentence that's imposed in your case would be more severe than you expect." (*Id.* at 24-25). Defendant again stated he understood. Based on this colloquy, there can be no question but that Defendant knew prior to entering his guilty plea that he faced a potential sentence at the mandatory minimum of 15 years to life if found to be a Armed Career Criminal. While he and counsel informed the Court that he would be challenging a designation as a Armed Career Criminal, Defendant was made well aware that it was certainly an unresolved issue for the Court to determine prior to sentencing.

Accordingly, the Court's colloquy cured any prejudice as the Court made it clear Defendant certainly could be subjected to the enhanced penalties under the Armed Career Criminal Act. *Ramos*, 170 F.3d at 565; *Elliott*, 2011 WL 1793384, at *5. In addition, Defendant acknowledged his true sentencing exposure. (R. 51, at 15-17). Thus, given the thorough colloquy by the presiding

12

District Judge, Defendant was well aware that he could be found to be an Armed Career Criminal and, in fact, reserved his right to directly appeal that very issue. Despite this knowledge, Defendant decided to enter a guilty plea. Accordingly, Defendant has not demonstrated "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Defendant having failed to demonstrate prejudice, his claim of ineffective assistance of counsel in this regard is without merit.

### 2. Counsel did not provide ineffective assistance with respect to advising Defendant regarding the Armed Career Criminal Act or in challenging its application

Defendant seems to argue that counsel provided ineffective assistance in considering the application of the Armed Career Criminal Act in two respects: he did not provide Defendant fair notice that he was a candidate for the enhancement prior to signing the Plea Agreement; and he "coerced" him to plead guilty to elements of § 924(e) that were not alleged in the indictment. (R. 44-1, at 9, 11). Defendant claims he was prejudiced by this conduct because he received "a higher sentence without notice." (*Id*. at 9). As explained below, neither argument has merit.

First, the record demonstrates that prior to signing the Plea Agreement, Defendant was well aware he could be found to qualify as an Armed Career Criminal. Defendant was first made aware of the issue when he met with counsel on June 4, 2013, prior to his initial appearance and arraignment. (R. 53-2, at 2 ¶ 3). Counsel stated in his Affidavit that he informed Defendant of the potential penalties, including that he could be considered to be an Armed Career Criminal, at this initial meeting. (*Id*.). Defendant has not rebutted counsel's Affidavit.

In addition, during his June 4, 2013, Initial Appearance and Arraignment, United States Magistrate Judge Robert E. Wier informed Defendant that if he is convicted of the instant charge and

13

he has three prior convictions for violent felonies or serious drug offenses then his penalties would increase under the Armed Career Criminal Act to at least 15 years and up to a life term of imprisonment. (R. 49, at 7). Magistrate Judge Wier explained that while he lacked information at that time regarding Defendant's criminal record, Defendant should talk to his counsel about whether that statute might impact him in the event of a conviction in this case. (*Id.*).

Further, defense counsel's Motion filings prior to the rearraignment proceeding also provide support that counsel was investigating the applicability of the Armed Career Criminal Act, and had discussed the issue with Defendant. Specifically, counsel relayed in his Motion to Continue Trial that he was working on determining Defendant's possible designation as an Armed Career Criminal with Probation and the Government. (R. 13).

Counsel also stated in his Affidavit that prior to filing the August 26, 2013, Motion for Rearraignment, he met with Defendant to discuss the proposed Plea Agreement. (R. 53-2, at 3 ¶ 8). Counsel stated that he discussed each paragraph with Defendant, and Defendant stated he wanted to challenge his status as an Armed Career Criminal. (*Id.*). Counsel explains that he instructed his law clerk to research the issue of whether Defendant's criminal history would classify him as an Armed Career Criminal, and he received a memorandum that demonstrated Defendant was likely to be so designated. (*Id.* at 3 ¶ 9). Counsel states he discussed the legal memorandum with Defendant, and Defendant stated he would still plead guilty. (*Id.*). However, counsel explained that prior to the September 3, 2013, rearraignment, Defendant advised counsel that he did not want to enter a guilty plea at that time because he believed one of the prior predicate drug trafficking felonies was dismissed as part of his plea agreement in the Harrison County Circuit Court. (*Id.* at ¶ 10).

14

Counsel's factual account is supported by Defendant's October 3, 2013, Motion to Continue Rearraignment, wherein counsel noted that in discussing the application of the Armed Career Criminal Act with Defendant, Defendant informed counsel that he believed one of the drug trafficking charges was dismissed as part of his plea agreement in the Harrison County Circuit Court. (R. 18). Counsel further explained in that Motion that he traveled to the Harrison Circuit Clerk's Office, obtained copies of the official court documents and ordered a copy of the video of the plea proceeding. Counsel noted in the Motion that he had received the video of the plea proceeding and needed time to review it with Defendant. (*Id*.).[5]

Counsel's Affidavit states that after reviewing the state court proceedings and a video tape wherein Defendant made incriminating statements about the current charge, Defendant told counsel he would plead guilty, but he was concerned about the Armed Career Criminal designation. Counsel explains that he told Defendant he thought Defendant did qualify for the designation, but would reserve the issue so they could argue it at sentencing and they would also reserve the right to appeal that designation if so found by the District Court. (*Id*. at 5 ¶¶ 15-16). Counsel also provides that prior to signing the Plea Agreement, he again informed Defendant that if he were found to be an Armed Career Criminal, that mandatory minimum sentence would be 15 years in prison. (*Id*. at ¶17).

---

[5]Counsel further recites in his Affidavit that after reviewing the video of the Harrison County Circuit Court plea proceeding and the related state court documents with Defendant, it was "conclusive" that Defendant had entered a guilty plea to three separate counts of felony trafficking as well as a felony count of fleeing and evading a police officer. (R. 53-2, at 4 ¶ 13). During this meeting with Defendant, counsel also first became aware that Defendant had given a recorded statement to law enforcement at the time of his arrest on the pending charge that had not been provided in discovery. (*Id*.). Counsel obtained the tape and reviewed it with Defendant. In the tape, Defendant voluntarily made several incriminating statements about the possession of the firearm and selling drugs. (*Id*. at 4 ¶15).

This account is further corroborated by the rearraignment transcript, wherein counsel informed the Court that Defendant would argue against an Armed Career Criminal designation. (R. 51, at 13-14).

Thus, the record demonstrates Defendant was well aware that he was a potential candidate for an Armed Career Criminal designation before he signed the Plea Agreement. In fact, counsel has accounted his efforts, at Defendant's request, to investigate Defendant's claim that one of the predicate offenses was to have been dismissed as part of a plea agreement in the state court. Defendant has not provided the Court with any evidence to meet his burden of demonstrating that counsel made errors so serious that he was not functioning as the counsel guaranteed the Defendant by the Sixth Amendment.

Instead, the record reflects counsel conscientiously undertook efforts to investigate the predicate offenses at Defendant's request and to argue that the offenses should be deemed one conviction and not three. And, as noted by the Sixth Circuit in affirming the presiding District Court's determination that the Armed Career Criminal designation was applicable, Defendant's convictions for three drug felonies were legally viewed as separate offenses for purposes of the enhancement. (R. 41).

Moreover, as discussed above, even if counsel did not provide Defendant notice that he could be a candidate for the Armed Career Criminal designation, Defendant has not demonstrated prejudice. Both the Plea Agreement and the presiding District Judge provided Defendant with such notice prior to entry of his guilty plea. (R. 51, at 15-17). Defendant also confirmed under oath that he read the Plea Agreement prior to signing it, discussed it with counsel, and understood it terms and conditions. (*Id*. at 9-10). He also affirmed his understanding of the potential penalties, including the possible application of the Armed Career Criminal Act, prior to the acceptance of his plea. (*Id*.

16

at 15-17).  Thus, any deficiency by counsel to inform Defendant of the possibility that he may be subject to the Armed Career Criminal enhancement was cured by the specific provisions in the Plea Agreement and by the District Court's plea colloquy.

Further, to the extent Defendant is arguing counsel should have challenged the application of the Armed Career Criminal designation because the required facts leading to its application were not pled in the Indictment or submitted to a jury, his claim lacks merit.   The Sixth Circuit has held that the Armed Career Criminal Act's sentencing provision is a not a separate offense and the government is not required to plead the predicate felonies in the indictment and prove their existence beyond a reasonable doubt under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) or *Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151, 2156 (2013).  *See United States v. Ellis,* 626 F. App'x 148, 154 (6th Cir. 2015) (rejecting constitutional challenge that *Alleyne* required government to prove defendant's previous convictions to a jury and beyond a reasonable doubt); *United States v. McMurray,* 653 F.3d 367, 370-71 (6th Cir. 2011) (district court's finding that there are prior qualifying convictions does not constitute sentence-enhancing factual findings that must be submitted to a jury and proven beyond a reasonable doubt) (citations omitted); *Wilkins v. United States*, Nos. 4:04-cv-28, 4:05-cv-22, 4:03-cr-24, 2007 WL 1041267, at *7 (E.D. Tenn. Apr. 6, 2007) (finding attorney did not render ineffective assistance by failing to object to Armed Career Criminal Act enhancement on basis that it was not charged in the indictment as there is no such requirement) (citing *Jones v. United States*, 526 U.S. 227, 243 n. 6 (1999)).

In addition, the Sixth Circuit has held that "due process does not require the government to provide prior notice of its intention to seek a sentence enhancement under the [Armed Career Criminal Act]."  *McMurray*, 653 F.3d at 371 (citations omitted).  As counsel has no constitutional

duty to raise futile or meritless arguments, any ineffective assistance claim in this regard fails under the first prong of *Strickland*. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel.").

### 3. Defendant's other claims of ineffective assistance are not sufficiently alleged

Defendant makes vague references to other alleged failures of his trial counsel that he asserts constitute the ineffective assistance of counsel, but he fails to provide any facts to support his arguments. For example, Defendant argues counsel failed to communicate with him by not providing all documents so that he could make an informed decision with regard to whether to plead guilty or go to trial, and recites certain ethical responsibilities under the Kentucky Rules of Professional Conduct. (R. 44-1, at 11). However, Defendant does not articulate any issues that he alleges counsel either failed to discuss with him, keep him informed on, or that he wanted to discuss with counsel but was unable to do so. He also has not identified any documents or information he alleges he was not provided, nor explained how such documents or information may have lead to a more informed decision or demonstrated "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Similarly, Defendant argues counsel failed to conduct an adequate independent pretrial investigation or to file any substantive motions. (R. 44-1, at 11-12). While Defendant provides some black-letter law regarding counsel's duty to make reasonable investigations, he does not provide facts or information that he alleges counsel should have discovered during any such investigation or explain how the missing evidence would have created a reasonable probability of

18

a different result. *United States v. Hassan*, Nos. 12-cr-20523, 14-cv-11592, 2014 WL 5361942, at *5 (E.D. Mich. Oct. 21, 2014) ("[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome") (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Nor does Defendant articulate what substantive motions counsel should have filed on his behalf.

Defendant having failed to set forth any factual basis for his claims, the Court is not required to make his argument for him. *See Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (explaining where "claims are stated in the form of conclusions without any allegations of fact in support thereof," a § 2255 motion is "legally insufficient to sustain review"); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (stating "[c]onclusions, not substantiated by allegations of fact with some probability of veracity, are not sufficient to warrant a hearing," much less relief); *accord United States v. Roach*, 502 F.3d 425, 442 (6th Cir. 2007) (deeming issue waived where arguments were undeveloped) (citing *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")).

Defendant also asserts that counsel failed to inform him of the consequences to pleading guilty as opposed to proceeding with trial. Again, Defendant does not provide any facts to explain what information he was denied or how it would have altered his decision to plead guilty. Moreover, any deficiency in this regard was cured by the presiding District Judge's colloquy wherein he explained to Defendant what rights he was giving up by pleading guilty and Defendant confirmed under oath that he understood. (R. 51, at 25-30); *see Blackledge*, 431 at 73-74 (representations of

a defendant at the plea hearing "constitute a formidable barrier in any subsequent collateral proceeding").

Lastly, Defendant also asserted in his Motion that counsel failed to meet the ethical obligations of the legal profession and failed to consider relevant factors, which resulted in erroneous exercise of discretion.  (R. 44, at 4).  To the extent his memorandum raises arguments and asserts facts that could be deemed to fall within these broad allegations, the arguments have been addressed above.  To the extent he intended to raise any other claim of deficient performance, Defendant has not met his burden with respect to either prong of *Strickland*; any such claims lack factual development.  *Blackledge*, 431 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

### B.      Non-Ineffective Assistance of Counsel Claims

To the extent Defendant's Motion and supporting memorandum can be read as asserting claims other than those of ineffective assistance of counsel, his claims fail. In his memorandum, Defendant argues the federal government improperly intervened in the state action by charging him federally with being a felon in possession of a firearm; and the Court erred in relying on its own factual findings to determine that he qualified as an Armed Career Criminal.  (R. 44-1, at 11-12). Defendant has procedurally defaulted these claims by not presenting them on direct appeal.  In addition, as these claims are not claims of ineffective assistance of counsel, his collateral attack on these grounds is barred by the waiver provision in his Plea Agreement.  Further, even if considered on their merits, the claims fail.

### 1.   Defendant has procedurally defaulted these claims

While claims of ineffective assistance of counsel in § 2255 motions are not procedurally defaulted when not first raised on direct appeal, *see Massaro v. United States*, 538 U.S. 500, 504 (2003), failing to raise other substantive claims on direct appeal will generally result in a procedural default. *Bousley v. United States*, 523 U.S. 614, 622 (1998). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise the arguments and . . . would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Bousley*, 523 U.S. at 622); *see also Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

Here, Defendant did not raise his arguments of due process violations on direct appeal. (R. 41). Thus, absent a showing of cause and prejudice or actual innocence, Defendant's failure to raise these claims on direct appeal results in a procedural default of those claims. *See Bousley*, 523 U.S. at 621. Defendant has not attempted to demonstrate either "good cause and prejudice" or "actual innocence" in his filings, and therefore, these claims are procedurally defaulted.

### 2.   Defendant waived his right to collaterally attack his plea, conviction and sentence except for claims of ineffective assistance of counsel

Even if Defendant were found not to have procedurally defaulted these claims, they are barred by the waiver contained in the Plea Agreement. In his Plea Agreement, Defendant expressly waived his right collaterally attack his guilty plea, conviction, and sentence with the exception of claims of ineffective assistance of counsel. (R. 31, at 4 ¶ 8). A motion brought pursuant to 28

U.S.C. § 2255 is a collateral attack on a conviction.  Specifically, Defendant's Plea Agreement provided in pertinent part:

> The Defendant waives the right to appeal the guilty plea, conviction and sentence except that Defendant may appeal the designation as an Armed Career Criminal. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

(*Id*.) (during the rearraignment the parties amended this paragraph as written above to clarify Defendant was not waiving his right to directly appeal any designation as an Armed Career Criminal).  Thus, if the waiver is found to be valid, Defendant is precluded by his Plea Agreement from collaterally attacking any issues barred by the waiver.

It is well settled that a defendant "may waive any right, including a constitutional right, by means of a plea agreement," including the right to collaterally attack his plea, conviction and sentence.  *Hardin v. United States,* 595 F. App'x 460, 461 (6th Cir. 2014) (quoting *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001)) ; *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004).  However, a prisoner may challenge the validity of such a waiver if "his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel under *Hill v. Lockhart*, 474 U.S. 52 (1985) . . . ."  *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007).

Here, Defendant claims that his plea was not voluntarily and intelligently entered because his counsel failed to challenge the information to which he pled and counsel promised him that by pleading guilty he would not be sentenced to more than 10 years of imprisonment.  (R. 44-1, at 4-7). As discussed above, these arguments lack merit as the presiding District Judge engaged Defendant in a detailed plea colloquy that cured any alleged misstatement by counsel of Defendant's sentencing exposure, and thus Defendant cannot establish he was prejudiced by any alleged statement by

counsel that he would not receive a sentence in excess of 10 years.  (R. 51, at 15-17).  In addition, the Sixth Circuit has held the facts underlying a finding that the Armed Career Criminal Act applies to a defendant are not facts that must be pled in an indictment, submitted to a jury and proved beyond a reasonable doubt.  *See McMurray,* 653 F.3d at 370-71.  Therefore, counsel did not provide ineffective assistance in making a meritless argument that the enhancement under the Armed Career Criminal Act could not be applied to Defendant because the Indictment did not set forth the factual basis for such a finding.  Thus, Defendant's argument that his plea was not knowing, intelligent, and voluntary because of his counsel's ineffective assistance lacks merit.

Further, a review of the transcript of the rearraignment proceeding demonstrates the Plea Agreement and waiver provisions were thoroughly reviewed with Defendant, and he confirmed he understood the terms and ramifications.  (R. 51).  Federal Rule of Criminal Procedure 11(b)(1)(N) requires the District Court to "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or collaterally attack the sentence."  Compliance with Rule 11(b)(1)(N) is sufficient to show that the defendant entered into the waiver agreement knowingly, intelligently and voluntarily.  *See United States v. Sharp*, 442 F.3d 946, 950 (6th Cir. 2006); *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006).

Here, presiding District Judge Reeves thoroughly reviewed the waiver provision with Defendant at his rearraignment.  In fact, the AUSA recognized during the rearraignment that the language in the Plea Agreement was not clear Defendant was reserving his right to appeal any designation that he is an Armed Career Criminal, and the parties amended the waiver provision at that time to clarify he was retaining his right in that regard.  (R. 51, at 20-23).  After the modification, Judge Reeves engaged Defendant in the following:

THE COURT:                  Now, let me read the change that's been made and make sure that everyone is in agreement with the language and with the changes as I understand it.

Paragraph 8 states that, "the defendant waives the right to appeal the guilty plea, conviction, and sentence; except the defendant, Mr. Alexis, may appeal the designation as an armed career criminal." And that would be if he is designated as an armed career criminal.

MR. WALKER:                 That's correct, Your Honor.

THE COURT:                  And then the parties -- I'm sorry the defendant and the attorneys have all initialed that change.

And the next sentence would read, "With the exception of claims of ineffective assistance of counsel, the defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence." So that reference to the armed career criminal has been taken out in the last sentence.

MR. WALKER:                 That's correct, Your Honor.

THE COURT:                  All right. Thank you. Mr. Darling, do you agree with that change?

MR. DARLING:                Yes, Your Honor.

THE COURT:                  Mr. Alexis, you've heard me describe the change that's been made to paragraph 8.

DEFENDANT ALEXIS:           Yes, sir.

THE COURT:                  Do you agree with that change?

DEFENDANT ALEXIS:           Yes, sir.

THE COURT:                  Of course, it is to your benefit, the change that's been made. And you fully understand it; is that correct?

DEFENDANT ALEXIS:           Yes, sir.

24

| THE COURT: | And you've initialed the change as well with the attorneys correct? |
|---|---|
| DEFENDANT ALEXIS: | Yes, sir. |

(R. 51, at 20-24).

Because Judge Reeves properly explained that Defendant was waiving his right to collaterally attack his guilty plea, conviction, and sentence except for claims of ineffective assistance of counsel and verified Defendant understood that he was giving up those rights, the requirements of Rule 11(b)(1)(N) were met. Further, Defendant's Plea Agreement contains a provision that states "Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary." (R. 31, at 5 ¶ 14). Finally, Defendant's handwritten initials next to the modification of the waiver provision further illustrate his knowledge and understanding of the provision as modified. (*Id.* at 4 ¶ 8). Defendant has not established that he did not understand the terms of his Plea Agreement or that he entered into it involuntarily. *See Hardin*, 595 F. App'x at 461-63 (finding a valid waiver when Defendant acknowledged he understood the terms of the plea agreement, had discussed his agreement with his attorney, and did not indicate any confusion about the meaning of collateral attack). Therefore, Defendant's waiver is enforceable and he cannot collaterally attack his guilty plea, conviction, or sentence on any basis other than claims of ineffective assistance of counsel.[6] Nevertheless, even if considered, Defendant's claims lack merit.

---

[6]Furthermore, a challenge that a plea was involuntary and unintelligent is also subject to procedural default for failing to raise the issue on direct appeal unless the defendant can demonstrate cause and prejudice or actual innocence. *Bousley*, 523 U.S. at 621.

### 3.   Defendant has not demonstrated the federal government improperly intervened in his state court action

Defendant seems to argue that the federal government improperly intervened in his state case by charging him federally.  Defendant argues the charges should have remained in state court and discusses generally the *Younger* abstention doctrine and cites to *Bond v. United States* __ U.S. __, 131 S. Ct. 2355 (2011) (holding criminal defendants have standing to challenge their statute of conviction on the ground that it violates the Tenth Amendment).

It is undisputed that Defendant was charged in this federal court with violating 18 U.S.C. § 922(g), a federal crime.  The Sixth Circuit has held the enactment of § 922(g) was a valid exercise of Congress's authority under the Commerce Clause of the United States Constitution.  *Holmes v. United States*, 281 F. App'x 475, 482 (6th Cir. 2008) (rejecting argument that conviction under § 922(g) was void for violating Tenth Amendment's separation of power between states and the federal government, finding "the decided law in this circuit is that § 922(g) is a valid exercise of congressional authority under the Commerce Clause") (citing *United States v. Henry*, 429 F.3d 603, 619 n. 20 (6th Cir. 2005) (citing cases)); *Jarnigan v. United States*, No. 3:08-cr-007, 2015 WL 1137150, at *4 (E.D. Tenn. Mar. 12, 2015) (rejecting argument in § 2255 motion that § 922(g) was invalid under *Bond*).

Here, Defendant admitted during the plea colloquy that the United States could prove the elements of the § 922(g) charge, including that the firearm was possessed in or affecting commerce by traveling at some time from one state to another.  (R. 51, at 29-30).  Thus, to the extent Defendant

challenges his conviction as violating the Tenth Amendment, his argument fails as § 922(g) has been held to be a valid exercise of congressional authority under the Commerce Clause.[7]  *Id.*

Moreover, to the extent Defendant is arguing the Commonwealth of Kentucky, not the federal government, should have prosecuted him on the gun charge, he fails to recognize he was charged in this Court with violating a federal statute, which lies within the Court's original jurisdiction under 18 U.S.C. § 3231.  Defendant has not set forth any specific facts or evidence of any improper conduct that would suggest the federal government's decision to prosecute him under its own statute was a violation of Defendant's rights.  Accordingly, to the extent Defendant is raising such a claim, it lacks merit.

### 4. Armed Career Criminal Act provisions are not a separate offense that must be pled in the indictment and proven to a jury beyond a reasonable doubt

To the extent Defendant's memorandum can be read to assert a claim that the Court erred in finding he qualified as an Armed Career Criminal, his argument lacks merit.  Defendant argues that *Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151 (2013), requires the predicate convictions on which the Court found he qualified as an Armed Career Criminal be pled in the Indictment, presented to a jury and proven beyond a reasonable doubt.  (R. 44-1, at 9-10, 12-13).

---

[7]Defendant's citation to *United States v. Lopez*, 514 U.S. 549 (1995) is also distinguishable, as the Court held there that the Gun-Free School Zones Act of 1990 exceeded Congress's Commerce Clause authority.  The statute at issue here, § 922(g), has been found to be a proper exercise of Commerce Clause authority.  *Holmes*, 281 F. App'x at 482.  Nor does Defendant's citation to *United States v. Dobbs*, 499 F.3d 904 (8th Cir. 2006) further his argument.  There, while the concurrence questioned the federal government's decision to exercise jurisdiction in the case given its tenuous nexus to interstate commerce, the court held its precedent required finding the robbery of a mom and pop store involved a sufficient nexus to interstate commerce to qualify as a Hobbs Act violation; thus jurisdiction was proper.

In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the Supreme Court held "a judge is permitted to find, based on the preponderance of the evidence, the fact of a prior conviction." Defendant, however, argues that because the Armed Career Criminal Act increases the mandatory minimum sentence he faced, *Alleyne* required a jury, not the Court, find he met the requirements for such a designation. While the Supreme Court held in *Alleyne* that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155, it specifically declined to disturb the narrow exception for the fact of a prior conviction established by *Almendarez-Torres*. *Id.* at 2160 n.1 ("Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today."). Thus, *Alleyne* would not apply to the Court's finding that Defendant had three predicate convictions for serious drug offenses.

In fact, the Sixth Circuit has considered and rejected similar argument, stating:

> We have rejected the argument that the [Armed Career Criminal Act] sentencing provision is a separate offense and that the government must plead in the indictment and prove beyond a reasonable doubt the predicate felonies. *United States v. Wolak*, 923 F.2d 1193, 1199 (6th Cir.), *cert. denied*, *371 501 U.S. 1217, 111 S. Ct. 2824, 115 L. Ed.2d 995 (1991); *United States v. Brewer*, 853 F.2d 1319, 1322 (6th Cir. 1988) (on reh'g) (analyzing antecedent statute to the ACCA), *cert. denied*, 488 U.S. 946, 109 S. Ct. 375, 102 L. Ed.2d 364 (1988), 489 U.S. 1021, 109 S. Ct. 1142, 103 L. Ed.2d 202 (1989). That the [Armed Career Criminal Act] is a sentence enhancement rather than a separate offense is well established. *See, e.g., Custis v. United States*, 511 U.S. 485, 490, 114 S. Ct. 1732, 128 L. Ed.2d 517 (1994) ("The ACCA provides an enhanced sentence. . . ."); *Taylor v. United States*, 495 U.S. 575, 577, 110 S. Ct. 2143, 109 L. Ed.2d 607 (1990) ("[The ACCA] provides a sentence enhancement . . . ."). Thus, McMurray's due-process challenge to the [Armed Career Criminal Act] may be more appropriately construed as a constitutional challenge to his sentence–which we also review de novo. *United States v. Martin*, 526 F.3d 926, 941 (6th Cir.), *cert. denied*, __U.S. __, 129 S. Ct. 305, 172 L. Ed.2d 223 (2008). We have observed that due process does not require the government to provide prior notice of its intention to seek a sentence enhancement under the [Armed Career Criminal Act]. *United States v. Mauldin*, 109 F.3d 1159, 1163 (6th Cir. 1997);

*United States v. Miller*, 371 Fed. Appx. 646, 649–50 (6th Cir. 2010) (unpublished decision); *accord United States v. Mack*, 229 F.3d 226, 231 (3d Cir.2000) (collecting cases holding the same), *cert. denied*, 532 U.S. 1045, 121 S. Ct. 2015, 149 L. Ed.2d 1016 (2001).

The Supreme Court, in *Almendarez–Torres v. United States*, 523 U.S. 224, 226-27, 118 S. Ct. 1219, 140 L .Ed.2d 350 (1998), held that when a statute constitutes a penalty provision, rather than a separate crime, the government need not include the provision in the indictment. "[T]he Supreme Court has uniformly excepted 'the fact of a prior conviction' from its general rule that sentence-enhancing facts must be found by a jury and proved beyond a reasonable doubt." *Martin*, 526 F.3d at 941 (citing *United States v. Booker*, 543 U.S. 220, 244, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005); *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed.2d 435 (2000)). . . .

We therefore reject McMurray's constitutional challenges to the enhancement of his sentence under the [Armed Career Criminal Act].

*McMurray*, 653 F.3d at 370-71; *see also United States v. Ellis*, 626 F. App'x 148, 154 (6th Cir. 2015) (rejecting on direct appeal challenge to sentence under Armed Career Criminal Act on basis predicate offenses not proven to jury, stating *Alleyne* did not overrule *Almendarez-Torres*); *United States v. Nagy*, 760 F.3d 485, 488-89 (6th Cir. 2014) (affirming sentence under Armed Career Criminal Act, finding *Alleyne* does not require government to submit prior convictions to a jury and prove their existence beyond a reasonable doubt).  Thus, Defendant's challenge to the Court's enhancement of his sentence under the Armed Career Criminal Act lacks merit.

Further, to the extent Defendant cites to *Johnson v. United States*, __ U.S.__, 135 S. Ct. 2551 (2015) and *United States v. Cotton*, 535 U.S. 625, 632 (2002), they are not on point.  In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act, i.e. that portion of the Act that defines a "violent felony" as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another," is unconstitutionally vague.  *Id*. at 2557.

However, the Supreme Court limited its holding in *Johnson* to the residual clause, and did not extend it to the other clauses of the Act. *Id*. at 2563.

Here, the presiding District Judge found Defendant qualified for the enhancement under the Act because he has three convictions for serious drug felonies committed on occasions different from one another. Thus, the Court's finding was not based on the residual clause of the Act, and *Johnson* is not applicable.

*Cotton* is also distinguishable. In *Cotton*, defendants were convicted of conspiracy to distribute and to possess a "detectable amount" of cocaine. *Cotton*, 535 U.S. at 632. They were sentenced based on the district court's finding of at least 50 grams of cocaine base, which was not charged in the indictment or submitted to a jury. The Supreme Court vacated the sentences under *Apprendi*, finding it was a fact other than a prior conviction that increased the penalty beyond the statutory maximum. *Id*. As discussed above, neither *Apprendi* nor *Alleyne* apply to the fact of a prior conviction. Thus, the Court did not err in making the determination that Defendant had three prior convictions for serious drug felonies, and therefore qualified for the Armed Career Criminal enhancement.

Accordingly, as the predicate felony convictions were not required to be included in the Indictment and submitted to a jury, and the Government is not required to provide notice of its intent to seek the enhancement under the Armed Career Criminal Act, Defendant cannot demonstrate an error of constitutional magnitude that had a substantial and injurious effect on the proceedings or a fundamental defect resulting in a miscarriage of justice or a due process violation. *McMurray*, 653 F.3d at 370-71. Accordingly, to the extent Defendant seeks to raise this claim, it lacks merit.

### III.   CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's § 2255 Motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will further be herein **recommended** that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

31

## IV.    CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that:

(1)    Defendant Steeve Alexis's Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (R. 44) be **denied;**

(2)    a Certificate of Appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter;

(3)    Judgment in favor of the United States be entered contemporaneously with the District Court's entry of its final order; and,

(4)    this action be stricken from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b).  Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 26th day of April, 2016.



Signed By:

*Candace J. Smith*

**United States Magistrate Judge**

J:\DATA\habeas petitions\2255 R&R
general\13-69-DCR Alexis R&R.final.wpd