UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 13-069-DCR |
| V. | ) ) | |
| STEEVE ALEXIS, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Steeve Alexis has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). [Record No. 73] However, he fails to identify extraordinary or compelling reasons for a sentence reduction. As a result, his motion will be denied.

I.

Alexis pled guilty in 2013 to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [Record No. 34] The loaded 9mm firearm was uncovered during a search of his residence after he sold narcotics to a confidential informant. [Record No. 37 at ¶¶ 4, 6 (Presentence Investigation Report).] Along with that firearm, the search revealed cocaine, marijuana, and drug paraphernalia. *Id.*

Earlier, Alexis pled guilty in 2009 to three state felony convictions for trafficking in a controlled substance. [Record No. 37 at ¶ 44] Those charges stemmed from three transactions during which he sold oxycodone to an informant. *Id.* The first occurred on July 2, 2009, the second on July 17, 2009, and the third on July 27, 2009. *Id.* When police attempted to arrest Alexis after the second transaction, he led them on a high-speed chase in which he barreled

through three red lights. *Id.* The officers abandoned their pursuit due to significant safety risks. *Id.* After driving through two fences, Alexis scurried away on foot. *Id.* He was arrested a few days later. *Id.*

During sentencing, Alexis objected to being designated an armed career criminal under 18 U.S.C. § 924(e)(1). [Record No. 41 at 3] He argued that, because those three controlled buys resulted in three sentences that ran concurrently, they should not count as separate drug offenses. *Id.* However, the Court overruled his objection and sentenced him with that enhancement to 232-months' of incarceration. [Record No. 34] Alexis challenged his sentence and armed career criminal designation on appeal, but the Sixth Circuit affirmed both. [Record No. 41 at 8]

Presently, Alexis is 44-years old, has served roughly eleven years of his sentence, and has a projected release date in December 2029. [Record No. 75-2 at 1, 3]

**II.**

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). It, however, may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons" warrant a reduction, the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and the 18 U.S.C. § 3553(a) factors, to the extent they apply, support a reduction. *United States v. Washington*, 122 F.4th 264, 266 (6th Cir. 2024) (quoting *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (quoting 18 U.S.C. § 3582(c)(1)(A))).

The Sentencing Commission amended § 1B1.13, effective November 1, 2023, and identified what district courts may constitute "extraordinary and compelling reasons" for a sentence reduction. Specifically, they may consider: "the defendant's (1) medical

circumstances; (2) age; (3) family circumstances; (4) whether the defendant was a victim of abuse while in custody"; (5) "other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)"; and (6) "unusually long sentence" if a defendant "has served at least ten years of the term of imprisonment" then changes to the law "(other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered . . . but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Washington*, 122 F.4th at 266–67 (citing U.S.S.G. Suppl. to App. C, amend. 814; U.S.S.G. § 1B1.13(b)(1)–(4) (U.S. Sent'g Comm'n 2023)); § 1B1.13(b)(5)–(6).

That said, Section 1B1.13(b)(6) (*i.e.*, an unusually long sentence) is invalid because the Sentencing Commission exceeded its authority with that amendment. *United States v. Bricker, United States v. McHenry, and United States v. Orta*, 135 F.4th 427, 450 (6th Cir. 2025). Further, changes in the law "(including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). But if "a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*

- 3 -

### III.

Alexis presents six claims that he argues amount to extraordinary and compelling reasons for a sentence reduction: (1) sentence disparity resulting from his armed career criminal designation, (2) percent served of his sentence, (3) rule-following conduct while incarcerated, (4) extensive rehabilitation, (5) health issues and injury by the United States, and (6) all these claims taken together. [Record No. 73 at 3] The United States opposes his motion. [Record No. 79]

As discussed previously, the first step is to identify whether extraordinary or compelling reasons exist.

**Claims One and Two:** To the extent that Alexis brings his sentence disparity and percent of his sentence served claims under Section 1B1.13(b)(6) (*i.e.*, an unusually long sentence), they fail. The Sixth Circuit has declared that provision to be constitutionally invalid. *See Bricker*, 135 F.4th at 450. And even assuming Alexis is correct that there have "been new trending case rulings in regard to how prior convictions are counted and used"[1] under the Armed Career Criminal Act, nonretroactive changes to the law "shall not be considered for purposes of determining whether an extraordinary and compelling reason exists." [Record No. 73 at 6]; U.S.S.G. § 1B1.13(c). Those changes may only be considered for "purposes of determining the extent of any such reduction," after the Court has already determined early release is appropriate. U.S.S.G. § 1B1.13(c).

---

[1] Contrary to Alexis' contention about new trending case rulings, in *Wooden v. United States*, 595 U.S. 360, 369–70 (2022), the Supreme Court asserted the "straightforward and intuitive" nature of its test by noting that courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart." *See also* Record No. 79 at 4–5 (collecting cases).

Although Alexis believes that his sentence is too long, "'there is nothing "extraordinary" about leaving untouched the exact penalties that Congress prescribed' for the violation of a statute." *Washington*, 122 F.4th at 267 (quoting *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021)). And a criminal defendant "'serving the duration of a lawfully imposed sentence'" is routine—"'not compelling.'" *Id.* (quoting *McCall*, 56 F.4th at 1056).

**Claims Three and Four:** To start, the undersigned commends Alexis for his accomplishments and efforts to improve and prepare for his future during his incarceration. The discipline and skills he has acquired will, without a doubt, serve him well upon release. But accolades aside, Alexis suggests that his rehabilitation and conduct while incarcerated support a sentence reduction, but as the government points out, rehabilitation alone is insufficient. [Record No. 79 at 5]

In *United States v. Washington*, the court found that the defendant who had gained work experience and completed his education in prison had not shown enough to warrant a sentence reduction because rehabilitation alone is an insufficient basis. 122 F.4th 264, 268 (6th Cir. 2024); *see also United States v. Ruffin*, 978 F.3d 1000, 1009 (6th Cir. 2020) (finding that "rehabilitation alone does not provide a proper basis for relief" under § 3582(c)); *United States v. Adkins*, No. 5:18-055-DCR, 2020 WL 7755629, at *4 (E.D.Ky. Dec. 29, 2020). Defendants nationwide routinely participate in rehabilitative programs to increase their post-incarceration opportunities, but courts within the Sixth Circuit do not ordinarily consider rehabilitation extraordinary for purposes of granting compassionate release. *See e.g.*, *McCall*, 56 F.4th at 1056; *United States v. Washington*, 2024 WL 150289 (E.D. Ky. 2024).

"However, rehabilitation of the defendant . . . may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's

term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). Therefore, the Court now turns to the other circumstances that Alexis has identified.

**Claims Five and Six:** Alexis appears to argue that he suffers from a "medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health." [Record No. 73 at 12]; U.S.S.G. § 1B1.13(b)(1)(C). More specifically, he asserts that he lost a toe due to the BOP's medical negligence and that his lawsuit against the facility remains pending. *Id.* He also claims that the BOP is not providing adequate care for his diabetes or an eye condition that caused "blood leaking in the back of his eye," for which he believes surgery is necessary. *Id.*

The United States insists that Alexis is not suffering from a life-threatening terminal illness, a serious condition requiring specialized medical care, or the aging process in such a way that diminishes his ability to provide self-care in the correctional environment. [Record No. 79 at 6] Finally, it argues that the BOP's medical care has been adequate, despite Alexis' repeated noncompliance with medical directives. *Id.* at 6–7.

Medical documents provided by the government demonstrate that Alexis is receiving appropriate medical care for his conditions. His diabetes is closely monitored by the BOP and generally well managed. [*See* Record No. 77-2.] It is true that he has lingering concerns with his feet, but recently he was a no-show for his podiatry appointment and on January 20, 2026, he declined a visit with the BOP's health services when he was called in to follow up on his no-show podiatry appointment. [Record No. 77-3 at 3–4] In summary, Alexis cannot claim that this condition is being inadequately managed when he is non-compliant with the recommended treatment.

Despite Alexis' concerns about eye problems, Dr. Skolik at Huntington Retina Center indicated on September 23, 2024, that he no longer had acute retinal edema or retinal ischemia and that both were stable. [Record No. 77-2 at 17, 206] Thus, by all accounts, the BOP is adequately managing these conditions and Alexis believing surgery is necessary does not change this result.

Next, Alexis claims that his toe loss was caused by the BOP's medical negligence. [Record No. 73 at 12] Although the government appears to concede that injury to an incarcerated person (resulting from negligence by the BOP) may be considered extraordinary and compelling reasons for a sentence reduction, it cites no authority for that contention. [*See* Record No. 79 at 7.] While sexual or physical abuse that results in an injury by the BOP can qualify under § 1B1.13(b)(4), those are intentional acts, not negligent ones. The Court's interpretation is such that medical negligence would not fall under that provision or the catchall in § 1B1.13(b)(5) because it lacks a similar gravity.

Further, motions for "compassionate release [are] not the proper vehicle to seek relief for claims of improper medical care." *United States v. Smith*, No. 2: 18-CR-140-6, 2023 WL 3589840, at *5 n.3 (E.D. Tenn. May 22, 2023), *aff'd*, No. 22-5559, 2023 WL 4703864 (6th Cir. July 24, 2023), *and aff'd*, No. 23-5519, 2024 WL 1007115 (6th Cir. Mar. 8, 2024) (citing *United States v. Guzman*, No. 3: 10-CR-161, 2021 WL 5217624, at *6 (E.D. Tenn. Nov. 9, 2021) (providing that claims for failing to provide adequate medical treatment "should be addressed through 42 U.S.C. § 1983 or another appropriate civil remedy, not through a motion for compassionate release.") (citations omitted). Instead, claims of medical negligence are to be handled through exhausting internal grievance procedures and civil lawsuits as Alexis is already doing. [*See* Record No. 80 at 5.]

In claim six, Alexis argues that the catchall provision in § 1B1.13(b)(5) demonstrates extraordinary and compelling circumstances when all his claims are considered together. [Record No. 73 at 12] But Alexis has not identified extraordinary and compelling reasons through his sentencing disparity claim because "case law trends" are not retroactive, his rehabilitation claim because rehabilitation is insufficient alone, or his medical claims because the BOP is providing adequate care and any medical negligence is properly addressed *via* a civil lawsuit. Considering these reasons together, they are not "similar in gravity to those described" by the Sentencing Commission in § 1B1.13(b)(1)–(4).

### IV.

Finding no extraordinary or compelling reasons for a sentence reduction and that a reduction would not be consistent with applicable policy statements issued by the Sentencing Commission, the Court declines to reassess the § 3553(a) factors. Accordingly, it is hereby

**ORDERED** that the defendant's motion for compassionate release [Record No. 73], is **DENIED**.

Dated: March 13, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky